## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **RAWAD ALAWAR** *et al.*,<br>        *Plaintiffs*,<br><br>**v.**<br><br>**TRICAN WELL SERV., L.P.**,<br>        *Defendant.* | )<br>)<br>)<br>)        Civil No. 5:16-CV-00014-RCL<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Before the Court are defendant Trican Well Service, LP's ("Trican") Motion for Summary Judgment [42], defendant's Brief in Support thereof [43], plaintiff Rawad Alawar and Class Members' ("Alawar" or "Field Engineers" or "Class Members") Response in Opposition thereto [50], and defendant's Reply [53]. Also pending before the Court are plaintiffs' Objections to Jason Cleveland's Declaration [49], defendant's Response thereto [54], and plaintiffs' Reply [57].

After reviewing the pleadings and the record in its entirety, the Court will **GRANT IN PART** and **DENY IN PART** Trican's Motion for Summary Judgment. Alawar's Objections to Jason Cleveland's Declaration will be **OVERRULED WITHOUT PREJUDICE**, and such objections shall be governed by the Federal Rules of Evidence at trial.

## I.    Trican's Motion for Summary Judgment

### A.    Background

This collective action arises under the Fair Labor Standards Act of 1938 ("FLSA"), codified as amended at 29 U.S.C. §§ 201 *et seq.* Alawar and the Field Engineers were formerly in Trican's employ. ECF No. 43, at 5; ECF No. 50, at 1. Alawar brings this action on behalf of himself and all other Field Engineers who were contemporaneously in Trican's employ. *Id.*

Alawar also brings his claim on behalf of William Fruhwirth, who Trican employed as a Service Supervisor. *Id.* The plaintiffs, collectively, are thus "Field Engineers and Fruhwirth."

At times relevant to the events underlying this litigation, Trican was a pressure-pumping company with operations in many states, headquartered in Houston. ECF No. 43, at 6; ECF No. 50, at 2. Specifically, it provided integrated well-service solutions to its customers, who were involved in the exploration and development of oil and natural gas reserves. ECF No. 43, at 6. Chiefly, Trican provided fracking and coil tubing support to its customers. ECF No. 50, at 2.

In general, Trican assigned one Field Engineer to each of its well-sites per shift, each of whom reported to a District Engineer. ECF No. 50, at 2; *see also* ECF No. 43, at 9. Trican also assigned one Service Supervisor to each well-site, whose function was to supervise the crew and all of the operations taking place at the well-site. ECF No. 50, at 2. Additionally, Trican's customers usually assigned a "Company Man" to represent the customer's interests at each well-site. ECF No. 50, at 2; ECF No. 43, at 9.

### 1. *The Field Engineers*

Since at least January 8, 2013,[1] the Field Engineers monitored down-hole well conditions from computer screens in "data vans" located on the well-sites. ECF No. 50, at 2; ECF No. 43, at 9. They were mainly responsible for monitoring a computer screen, which relayed certain data to them. ECF No. 50, at 2. According to the Field Engineers, one key duty was to alert the Service Supervisor and Company Man if the computer screen reported levels beyond those deemed acceptable to Trican and its customer. *Id.* at 2–3.

The parties' characterizations sharply differ vis-à-vis the scope of the Field Engineers' duties, their day-to-day functions, and Trican's reporting structure. For example, Trican alleges

---

[1] None of the parties identifies any of the plaintiffs' start dates in any of their pleadings, nor are their start dates readily ascertainable from the record.

that Field Engineers were "required to exercise [their] judgment and discretion on a daily basis to interpret the monitored data from the well, assess potential problems, and make recommendations based upon [their] findings." ECF No. 43, at 10. The Field Engineers, meanwhile, explain that they would "monitor the chemical levels present . . . and document such information on a spreadsheet to keep record." ECF No. 50, at 3. If the data fell beyond Trican's or its customers' established guidelines, Field Engineers "alerted the Service Supervisor, who would relay the information to other site employees and administrators." *Id.* Trican concedes that the Field Engineers "notified and conferred with the Company Man and/or the Service Supervisor" in such circumstances. ECF No. 43, at 10.

As another example, the Field Engineers allege that they "had no discretion to recommend changes to a project to resolve an identified problem." ECF No. 50, at 4. But, Trican maintains that the Field Engineers did, in fact, have "discretion to make recommended changes to a project to resolve an identified problem." *Id.* at 10–11. The parties agree that the Field Engineers would consult with the Service Supervisor, but they disagree as to whether the Field Engineers' input had any bearing on Trican's ultimate determination of resolving the problem. *Compare* ECF No. 43, at 11 ("Field Engineers were not required to get prior approval from anyone at Trican before making recommendations to the Company Man."), *with* ECF No. 50, at 4 ("The Field Engineer would consult with the Service Supervisor on the issues he found, but the Service Supervisor generally made recommendations to the Company Man on how to resolve issues. . . . Field Engineers never told the Company Man which direction to take.").

In addition, the parties provide conflicting characterizations of the nature of the Field Engineers' work. The Field Engineers maintain that they spent approximately one-quarter of their

time "conducting fluid recovery," a manual task. ECF No. 50, at 3. Trican maintains that it "did not require Field Engineers to perform manual labor on the job site." ECF No. 43, at 11.

Finally, the parties dispute the Field Engineers' work schedule and compensation regime. The Field Engineers allege that they were scheduled to work for "8 days on and 4 days off" for scheduled 12-hour shifts on each day. ECF No. 50, at 5. They maintain, however, that they were normally required to work beyond their scheduled hours, generally "14 or even 17 hours a day," and that they often "would be on the well-site for 14 or 15 days before they had time off." *Id.* at 5–6. Meanwhile, Trican maintains that it paid the Field Engineers "an annual salary in excess of $455 per week" and that they "understood their salary was intended to cover any and all hours worked," irrespective of "whether they worked over or under forty hours." ECF No. 43, at 7.

### 2. *The Service Supervisor*

Fruhwirth is the only Service Supervisor who is a party to this action. The parties do not dispute Fruhwirth's primary duties as a Service Supervisor. In general, Fruhwirth's main task was "to supervise his crew of 8-16 hourly equipment operators/ground hands." *Id.* at 12. He "ran [the well-sites] and crews with little to no supervision." *Id.* at 13. From time to time, Fruhwirth worked in the data van alongside the Field Engineers "as a team." *Id.* From time to time, Fruhwirth would "assist his crew with manual tasks," but Trican contends that this was not his primary duty. *Id.* at 14.

However, the parties distinctly characterize Fruhwirth's compensation structure. Trican alleges that Fruhwirth "understood his salary was intended to cover any and all hours worked" and that he would be paid "the same amount each week regardless of whether he worked over or under forty hours" in that week. *Id.* at 12. Fruhwirth maintains, however, that his salary was reduced on or about February 9, 2015 when Trican reduced the quantity of work available to him, but that it

continued to require him to work a varied schedule, so that he was no longer considered a "salaried" employee.  ECF No. 50, at 8.

### 3. *February 2015*

The parties do not dispute that on or about February 9, 2015, Trican's Director of Human Resources notified every Trican employee of a company-wide wage reduction.  *Id.* at 8.  Therein, Trican informed all of its employees that it would reduce their salaries by 10 percent.  *Id.* Notwithstanding the salary reductions, Trican continued to require the Field Engineers to work at their respective well-sites for a minimum of 12 hours per day, but would frequently "deviate from [that] schedule," causing Field Engineers to work very long shifts of up to 17 hours per day.  *Id.* Before the salary reduction, Field Engineers routinely worked a schedule of "8 days on, 4 days off," for 12 hours each day.  *Id.*  Thus, according to the Field Engineers, Trican reduced their pay and required them to work erratic, long hours.  *Id.*  Trican does not deny these allegations.  *See* ECF No. 43; ECF No. 53.

Some months later,[2] Trican terminated the Field Engineers' and Fruhwirth's employment. Trican alleges that, as a condition of receiving severance pay, some Field Engineers and Fruhwirth purportedly released any and all claims arising from their employ with Trican including, ostensibly, any FLSA claim.  ECF No. 43, at 14.  All of the plaintiffs were terminated in 2015.

On January 8, 2016, Alawar filed the instant action.  *See* Compl., ECF No. 1.  Alawar amended his complaint on January 15, 2016.  Amend. Compl., ECF No. 6.  On April 15, 2016, the Court granted the parties' Stipulated Motion for Conditional Certification and Notice to Putative Class Members, thus establishing a collective action against Trican.

---

[2] Neither party provides the Court with relevant dates, but instead points to executed Severance Agreements buried within exhibits.

B.     Legal Standard

A moving party is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Meadaa v. K.A.P. Enters., LLC*, 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 248 (1986).

"When summary judgment is sought on an affirmative defense, as here, the movant 'must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor.'"  *Dewan v. M-I, LLC*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  Once the movant does so, the burden shifts to the nonmovant to come forth "with 'specific facts' showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016) (same).

Critically, however, "'[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.'"  *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003)).  Further, "[m]ere conclusory allegations" are likewise insufficient to overcome a motion for summary judgment.  *Akene v. Goodwill Indus. of Cent. Tex.*, No. 17-CV-00360, 2018 WL 1128149, at *2 (W.D. Tex. Mar. 1, 2018) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

Accordingly, "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

C.    Discussion

1.    *The separation and release agreements do not bar or waive plaintiffs' FLSA claims.*

Emilio Chaho, Chad Facchine, Ruben Ortiz, and Jose Perales were Field Engineers who, upon their termination, signed a Separation and Release Agreement. ECF No. 43, at 14. Fruhwirth also signed such an agreement upon his termination. *See id.* By virtue of this agreement, Trican argues that Chaho, Facchine, Fruhwirth, Ortiz, and Perales' FLSA claims are barred because it "paid severance" to them "in exchange for their execution of" the Separation and Release Agreements they signed "at the time of their separation from employment." *Id.* at 14. But as a general rule, "even when there is a *bona fide* dispute as to whether certain employees are covered by the FLSA, and when that dispute has been settled in favor of paying the employees FLSA required wages, the employees' right to recover liquidated damages cannot be waived." *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

Trican urges that while "FLSA claims generally cannot be waived," they may be waived when the dispute centers on "wages." ECF No. 43, at 14. It then states that "the plain language of the Agreements" suggest that "Plaintiffs agreed to resolve and release *any* FLSA claims against Trican." *Id.* (emphasis added). Thus, Trican at once acknowledges the general prohibition on FLSA waivers, but then argues that these five plaintiffs executed precisely such a waiver to support its position.

For its part, Trican points the Court to *Martin v. Spring Break '84 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012) for the proposition that, in the Fifth Circuit, Courts must "uphold a release in cases where an employee is agreeing to resolve a *bona fide* dispute regarding wages." *Id*. And here, Trican alleges, the "Plaintiffs even acknowledged that Trican had paid them for all wages" and that "the Agreements executed by Plaintiffs effectively resolved any wage-related disputes between Trican and Plaintiffs." *Id.* at 14–15. Trican's reliance on *Martin* is misplaced.

*Martin* involved a waiver of FLSA claims in the context of a labor union, where the labor union was the "exclusive representative of the employees in the bargaining unit." *Martin*, 688 F.3d at 249. The Court cautioned that "FLSA substantive rights *may not be waived* in the collective bargaining process," but enforced the waiver against the employees only because their "FLSA rights *were not waived*, but instead, validated through a settlement of a *bona fide* dispute." *Id.* at 257 (emphases added). *Martin* is the exception, not the rule. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945) ("Where a private right so charged or colored with the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.").

*Martin*'s reasoning is thus only applicable to situations where there is an "unsupervised settlement[] that [is] reached due to a *bona fide* FLSA dispute over hours worked or compensation owed." *Bodle*, 788 F.3d at 165 (citing *Martin*, 688 F.3d at 255). In *Bodle*, the Fifth Circuit clarified the *Martin* rule, explaining that the exception does "not undermine the purpose of the FLSA because the plaintiffs [in *Martin*] did not waive their claims through some sort of bargain but instead received compensation for the disputed hours." *Id.* (citing *Martin*, 688 F.3d at 257). The *Bodle* Court went on to hold that "the absence of any mention or factual development of any claim

8

of unpaid overtime compensation in the . . . settlement negotiations precludes a finding that the release resulted from a *bona fide* dispute under *Martin.*" *Id.*

Here, the Separation and Release Agreements unequivocally indicate that the separating employees reserve the right to recover "base wages earned . . . through the Termination Date," and provides that they "shall be paid all such wages regardless of whether" they chose to sign the Agreements. *See, e.g.*, ECF No. 44-4, at 16 ¶ 3(b) (identical language in each Agreement). However, the Agreements purportedly demonstrate that the separating employees each "acknowledge[d] that" they "have been paid all wages (including but not limited to overtime wages) and/or commissions owing," and that they "have not worked any hours for which" they "have not received payment from the Company." *Id.* ¶ 4(c).

As a general matter, such waivers are not permissible. "The [FLSA] was a recognition of the fact that due to the unequal bargaining power as between an employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered the national health and efficiency." *O'Neil*, 324 U.S. at 706 (footnote omitted). Accordingly, where, as here, Trican does not suggest "that the right to the basic statutory minimum wage could be waived by any employee subject to the Act," it must follow that "the same policy considerations which forbid waiver of basic minimum *and overtime wages* under the [FLSA] also prohibit waiver of the employee's right to liquidated damages." *Id.* at 707 (emphasis added).

And although *Bodle* contemplates that the *Martin* exception could apply in situations where plaintiffs "discussed overtime compensation or the FLSA in their settlement negotiations," such an extension of *Martin* cannot apply where, as here, "there was no factual development of the number of unpaid overtime hours nor of compensation due for unpaid overtime." *Bodle*, 788 F.3d

9

at 165.  Were it otherwise, "[t]o deem the plaintiffs as having fairly bargained away" their right to assert a claim of wages due under the FLSA would frustrate the entire statutory regime.  *Id*.  And here, Chaho, Facchine, Fruhwirth, Ortiz, and Perales each had two equally unappealing choices: (1) either to sign the Separation and Release Agreements in consideration of two-weeks' severance pay, or (2) not to sign the Agreements and forfeit property (i.e., compensation) they were promised in contemplation of executing them.

Indeed, in either case, there exists a material question as to the parity of the bargaining power between Trican and Chaho, Facchine, Fruhwirth, Ortiz, and Perales.  It is a bedrock principle of contract doctrine that prospective agreements to limit judicial or administrative remedies are enforceable only if it is the result of a *bona fide* arm's-length, consensual bargain that is not otherwise the result of overreaching by one of the parties.  *See Loader Leasing Corp. v. Kearns*, 83 F.R.D. 202 (W.D. Pa. 1979); *see also Starcrest Trust v. Berry*, 926 S.W.2d 343 (Tex. Ct. App. 1996).  Indeed, the "prime purpose of the [FLSA] was to aid . . . those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *O'Neil*, 324 U.S. at 707 n.18 (citing FLSA's legislative history).

Accordingly, the parity of the parties' bargaining power is fundamental to the Court's inquiry into the validity of the Agreements insofar as they purport to divest Chaho, Facchine, Fruhwirth, Ortiz, and Perales of an express statutory right.  Here, unlike in *Martin*, these individuals had no labor union representing them.  *Cf. Martin*, 688 F.3d at 249.  Further, the Court notes that each of these employees signed the Separation and Release Agreements either *on* or *after* their separation date, which casts considerable doubt as to whether these five individuals truly "bargained for" the agreements.

Indeed, Chaho signed his agreement on October 23, 2015, but was terminated on October 22, 2015 (ECF No. 44-4, at 16 ¶¶ 2, 19); Perales signed his agreement on October 26, 2015, and was terminated on that same date (ECF No. 44-3, at 6 ¶¶ 2, 9); Facchine signed his agreement on March 14, 2016, and was terminated on that same date (ECF No. 44-2, at 15 ¶ 2, 9); Ortiz signed his agreement on March 19, 2015, and was terminated on that same date (ECF No. 44-1, at 21 ¶¶ 2, 25); and Fruhwirth was terminated on October 22, 2015, but the record does not indicate the date he signed the agreement (ECF No. 44-5, at 22 ¶ 2).

Thus, because there remains a question of fact as to whether Trican and Chaho, Facchine, Fruhwirth, Ortiz, and Perales freely bargained for the waiver of rights in their Separation and Release Agreements, and because the Court must draw all reasonable inferences from the facts in the plaintiffs' favor at this stage, the Court finds that each of these plaintiffs' FLSA claims are not barred by their Agreements. *Cf. Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620, 623–24 (1944) ("Where the undisputed facts leave the existence of a cause of action depending on questions of damage which [Fed. R. Civ. P. 56] has reserved from the summary judgment process, it is doubtful whether summary judgment is warranted on any showing.").

And even if the *Martin* exception were to apply to these claims, Chaho, Facchine, Fruhwirth, Ortiz, and Perales have advanced that "the parties never specifically negotiated for overtime compensation when agreeing to severance amounts," thus raising a specific question of material fact. ECF No. 50, at 18. In its reply, Trican asserts only that the text of the Agreements "effectively resolved any wage-related disputes between" it and Chaho, Facchine, Fruhwirth, Ortiz, and Perales. ECF No. 53, at 4. But Trican does not address the *Bodle* distinction raised in the plaintiffs' response. ECF No. 50, at 17. Accordingly, there exists a genuine dispute of material

fact that must be resolved before a jury and not on summary judgment.  *See, e.g.*, *Celotex Corp.*, 477 U.S. at 322.

Accordingly, the Court cannot grant summary judgment as a matter of law on this issue, and therefore will deny Trican's motion for summary judgment as to Chaho, Facchine, Fruhwirth, Ortiz, and Perales on the basis that they executed a waiver of claims.

2.    *The Field Engineers' FLSA claims cannot be resolved on summary judgment*.

The Field Engineers claim that Trican violated the FLSA's overtime provisions when it (1) misclassified them as "non-exempt" employees and (2) failed to pay them overtime compensation at one and one-half times their regular pay rates.  *See* Amend. Compl., ECF No. 6 ¶¶ 37, 46.

Subject to certain statutory exemptions, the FLSA requires an employer to compensate a covered employee for all hours worked in excess of 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  To ascertain whether an exemption applies, courts must employ a "'fair reading,' as opposed to the narrow interpretation previously espoused by [the Fifth] and other circuits."  *Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 579 (5th Cir. 2018) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).

Still, at all times, "the burden of proof on exempt status is on the employer."  *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999);  *Accord Dewan v. M-I, LLC*, 858 F.3d 331, 334 (5th Cir. 2017), *abrogated on other grounds by Navarro*, 138 S. Ct. at 1142.  And where, as here, the employer seeks summary judgment on an affirmative defense, it "'must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor.'"  *Dewan*, 858 F.3d at 334 (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis in original).  Trican fails to carry that burden here.

For its part, Trican argues that each of the Field Engineers and Fruhwirth were exempt from the FLSA's overtime provisions under the FLSA's administrative exemption. *See* ECF No. 43, at 15. In the alternative, Trican argues that some of the Field Engineers, as well as Fruhwirth, were exempt from the statute's overtime provisions under its "highly compensated employee" exemption. *Id.* at 18–19. On this record, neither of Trican's arguments is persuasive, and its motion for summary judgment must fail.

a.      Administrative Exemption

The FLSA exempts "any employee employed in a *bona fide* . . . administrative . . . capacity[.]" 29 U.S.C. § 213(a)(1). Trican claims that the Field Engineers were "properly classified . . . as exempt pursuant to [the FLSA's] 'administrative exemption.'" ECF No. 43, at 15. Whether this exemption applies "is primarily a question of fact," but the "ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question[] of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (citations omitted). At all times, the Court is cognizant that "[a] job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements" as detailed in the regulations promulgated under § 213 of the FLSA. *See* 29 C.F.R. § 541.2.

Accordingly, the Court first will draw all reasonable factual inferences in the plaintiffs' favor, and then make legal "inferences from the facts in applying the regulations and interpretations promulgated under 29 U.S.C. § 213(a)(1) . . . [to] make the ultimate determination of whether an employee was exempt" as a matter of law. *Id.* (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990)).

i.     Definition of an Administrative Employee

When Congress fashioned the FLSA, it chose to exempt from its provisions those employees "employed in a *bona fide* . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1). Congress delegated to the Department of Labor (the "Department") the task of "defin[ing] and delimit[ing]" those terms "from time to time by regulations of the Secretary [of Labor]." *Id.* In turn, the Department has codified its regulations and interpretations of the FLSA's exemptions at 29 C.F.R. §§ 541.0 *et seq.* (hereinafter the "regulations"). *See also Lott*, 203 F.3d at 331. The regulations appurtenant to "administrative employees" are codified at 29 C.F.R. §§ 541.200–04.

Therein, an "administrative employee" is an individual (1) who is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week;" (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

At all times, the Court is cognizant that any classification of an administrative employee must be *bona fide*, as the statute requires. *See Chevron USA, Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837, 843–45 (holding that courts must defer to an agency's definitions, but only where those definitions comport with the statute itself).

The first of these requirements is readily ascertainable; the second and third, however, "require a fact-finder to analyze the facts to determine the employee's primary duty, how the work directly relates to certain parts of the employer's business, and whether the duty involves some discretion and independence." *Dewan v. M-I, LLC*, 858 F.3d at 334. And here, because "factual issues such as identifying these employees' primary duties, or deciding if they exercised

independent judgment and discretion, cannot be resolved without making inferences from the evidence that are subject to genuine dispute," such interpretations should not and must not be decided on summary judgment. *Id.* at 335; *see also Singer v. City of Waco*, 324 F.3d 813, 818 (5th Cir. 2003) (such "ultimate determination[s]" necessarily "rel[y] on many factual determinations to be resolved by a jury").

1.     There is a genuine dispute as to the Field Engineers' salaries that precludes summary judgment.

For the first element of the administrative exception—the "salary basis"—to apply, a purportedly exempt employee must earn at least $455 per week. *See* 29 C.F.R. § 541.200(a)(1). Additionally, an employee is paid "on a salary basis" if, "under [the] employment agreement he regularly receives . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.118(a).

Moreover, exempt employees must receive their full salary for any week in which they perform any work, irrespective of the number of days or hours worked. *See id.* § 541.602(a)(1). Where an employer deducts or reduces a salaried employee's "predetermined compensation . . . for absences occasioned by the employer *or* by the operating requirements of the business," such employee's compensation must fall without the purview of the "salary basis" test, and thus such employee is no longer exempt from the FLSA's overtime requirements. *Id.* § 541.602(a)(2) (emphasis added).

Taking all of these provisions together, then, an employee is "salaried" within the meaning of the FLSA when her employer compensates her (1) on a regular basis, (2) a predetermined amount, (3) of at least $455 per week, (4) irrespective of the number of days or hours worked in

any such week, (5) that is not subject to a reduction because of the quality or quantity of her work. *Id.* §§ 541.118(a), 541.200(a)(1), 541.602(a)(1). An employee is thus not salaried if she is "ready, willing and able to work," and the employer reduces her predetermined remuneration because either (a) it requires her to be absent from work or (b) its "operating requirements" require the reduction in pay. *Id.* § 541.602(a)(2).

Here, Trican avers that there is no dispute that "the Field Engineers earned annual salaries ranging well above $455 a week." ECF No. 43, at 15. But, the Field Engineers allege, and Trican does not dispute, that Trican's Human Resources department issued a "Wage Rollback" notice dated February 9, 2015, wherein Trican reduced every employee's annual salary by 10 percent effective February 20, 2015. *See* ECF No. 50, at 8. The Class Members further allege that they "were still expected to work at the well-site on a schedule of 8 days on and 4 days off, with each shift being a minimum of 12 hours." *Id.* They further allege that, notwithstanding the reduction in employees' salary, Trican "would deviate from this schedule and shifts would sometimes increase to 14 or even 17 hours a day, with the day and night shifts having overlap." *Id.*

Trican does not dispute these material facts in its reply. *See* ECF No. 53, at 5–6. Nor does Trican argue that any of the Field Engineers' pay was reduced because of their failure to be "ready, willing and able to work." 29 C.F.R. § 541.602(a)(2). Instead, Trican asserts that it implemented the "salary reduction due to an economic slowdown to reflect" its long-term business needs, not "to evade the salary basis requirement or because of the quantity or quality of work performed by the Field Engineers." *Id.* at 6. Notwithstanding the salary reduction, Trican maintains, the Class Members "continued to earn a fixed weekly salary far in excess of $455 per week regardless of the number of hours worked, thus satisfying the [salary basis requirement]." *Id.* The Court is not persuaded that Trican satisfied the salary basis test on this record as a matter of law.

2. Even if the Field Engineers were salaried, there is a genuine dispute as to whether their remuneration was a "predetermined compensation" under the regulations, which precludes summary judgment.

While the Fifth Circuit has not fashioned a rule to ascertain whether a regular payment constitutes a "predetermined compensation" that is not subject to reduction, two circuits have had occasion to consider the question. In *Archuleta v. Wal-Mart Stores, Inc.*, the Tenth Circuit explained that "'an employer may prospectively reduce salary to accommodate the employer's business needs unless it is done with such frequency that the salary is the functional equivalent of an hourly wage.'" 543 F.3d 1226, 1231 (10th Cir. 2008) (quoting *In re Wal-Mart Stores, Inc.*, 395 F.3d 395 F.3d 1177, 1184 (10th Cir. 2005)). Where "'salary changes are so frequent as to make the salary the functional equivalent of an hourly wage," the Tenth Circuit "'treat[s] the 'salary' as a sham and den[ies] the employer the FLSA exemption[.]'" *Id.* (quoting *Wal-Mart*, 395 F.3d at 1189).

The Second Circuit has fashioned a more nuanced inquiry to ascertain whether reductions to predetermined remunerations render an otherwise salaried employee "non-exempt" under the salary basis test. In *Harvey v. Homebound Mortg., Inc.*, the Second Circuit explained that "'exempt status will be denied only if there is . . . an actual practice of making deductions.'" 547 F.3d 158, 164 (2d Cir. 2008) (quoting *Ahern v. Cty. of Nassau*, 118 F.3d 118, 121 (2d Cir. 1997) (alterations in original). If there is no such actual practice, courts in the Second Circuit may deny exempt status only where the employer demonstrates a "'clear and particularized policy—one which effectively communicates that deductions will be made in specified circumstances.'" *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

Because of the divergent rules existing in those two circuits, and because this Court does not have guidance from its own circuit court, the Court will follow the general rule that, "[b]ecause

the salary-basis test is a creature of the Secretary [of Labor]'s own regulations, his interpretation of it is . . . controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer*, 519 U.S. at 461 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). Those regulations are codified at 29 C.F.R. § 541.602.

Notwithstanding the divergent interpretations of 29 C.F.R. § 541.602 between the Tenth and Second Circuits, the Court understands its inquiry under the regulations to be twofold: (1) whether Trican paid the Field Engineers a "predetermined amount" on a regular basis irrespective of the quality or quantity of the work they performed during each period and, (2) if so, whether Trican reduced that predetermined amount because of the "operating requirements of the business." 29 C.F.R. § 541.602(a)(2).

On this record, the Field Engineers point to specific evidence in the record from which a reasonable jury could conclude that they were paid a "predetermined amount constituting all or part of [their] compensation, which amount [was] not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.602(a)(1); *see* ECF No. 50, at 8 n.37 (deposition testimony tending to show that the Field Engineers were paid a regular remuneration without regard to the number of hours they worked or the quality of their work in any given pay period). And, Trican readily concedes that it "implemented the salary reduction due to an economic slowdown to reflect the long-term business needs of Trican." ECF No. 53, at 6. Plainly, then, a reasonable jury could conclude that Trican reduced the Field Engineers' predetermined compensation because of the "operating requirements of the business." 29 C.F.R. § 541.602(a)(2).

The Court is not persuaded by the Tenth Circuit's interpretation articulated in *Archuleta*, and will decline to follow it. *Compare Archuleta*, 543 F.3d at 1231 (holding that employers may prospectively reduce non-exempt employees' salaries to accommodate their business needs, so

long as such reductions are not so frequent as to render the purported salary "the functional equivalent of an hourly wage"), *with* 29 C.F.R. § 541.602(a)(2) (where an employer deducts or reduces a salaried employee's "predetermined compensation . . . for absences occasioned by . . . the operating requirements of the business," such employee's compensation no longer qualifies as a "salary" under the "salary basis" test, and thus such employee is no longer exempt from the FLSA's overtime requirements).

Relying on *Archuleta*, Trican argues that it only imposed a one-time salary reduction. *See* ECF No. 53, at 6. The Field Engineers point to the February 9, 2015 Wage Rollback notice, which provides that "[Trican] cannot anticipate, at this time, the length of the roll back, but of course it will depend on the economic situation and [Trican's] customers getting back to work." ECF No. 50, at 8. And indeed, under the *Archuleta* test, because the salary deduction was a one time open-ended reduction, one might conceivably conclude that any alleged salary changes were *not* "so frequent as to make the salary the functional equivalent of an hourly wage," and thus within the purview of the FLSA's salary basis regime as a matter of law. *Cf. Archuleta*, 543 F.3d at 1231 (internal quotation omitted). In the Court's view, because the published, binding regulations are wholly silent as to any temporal or frequency requirement in the determination of whether a predetermined compensation is a "salary," *see* 29 C.F.R. § 541.602(a)(2), and because those "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the [FLSA]," it cannot and will not intrude upon the Department of Labor's "construction of [the FLSA] it is entrusted to administer," and will adhere to the long-standing "principle of deference to administrative interpretations." *Chevron*, 467 U.S. at 843–44.

The Court thus declines Trican's invitation to re-write the regulations and to follow an out-of-circuit authority that purports to do so.

Finally, the Court is unpersuaded by Trican's argument that the Field Engineers' compensation regime satisfied the salary basis test simply because they "continued to earn a fixed weekly salary far in excess of $455 per week regardless of the number of hours worked." ECF No. 53, at 6. Under Trican's theory, every employee who regularly earns $455 or more per week would be "salaried" under the FLSA. Trican thus asks the Court to ignore (1) the FLSA itself and (2) the Department's implementing regulations, which establish the parameters of the "salary basis" test. This the Court cannot and will not do. *See Chevron USA, Inc.*, 467 U.S. at 843–45 (holding that where the legislature delegates authority to an executive agency to promulgate interpreting regulations, courts must not impose their own constructions of the statute, but rather must follow the agency's own interpretation, so long as it is permissible).

Here, Trican advances no argument that the Department's implementing regulations defining the scope of the "salary basis" test are unreasonable *in se*. Instead, it readily concedes that the Department's regulations should guide the Court's analysis. *See* ECF No. 53, at 5 (pointing to a "Fact Sheet" promulgated by the Department for the proposition that it was permitted to reduce the Field Engineers' salaries and retain the benefit of the administrative exemption). Trican thus relies on informal agency guidance, which provides generally that employers may prospectively reduce an exempt employee's predetermined salary "'during a business or economic slowdown, provided the change is *bona fide* and not used as a device to evade the salary basis requirements.'" *Id.* (citing to the unwieldly U.S. Dep't of Labor, Wage & Hour Div., *Fact Sheet #70: Frequently Asked Questions Regarding Furloughs and Other Reductions in Pay and Hours Worked Issues* (2009), http://www.dol.gov/whd/regs/compliance/whdfs70.pdf [hereinafter Fact Sheet]).

First, the authority to which Trican cites is not a legal authority, but rather an informal interpretation of the FLSA that "only reminds affected parties of existing duties." *Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) (*en banc*). Therefore, the Fact Sheet does not and cannot "'effect[] a substantive change in the regulations.'" *Warder v. Shalala*, 149 F.3d 73, 80 (1st Cir. 1998) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995)).

Second, although such interpretations can be binding, they must be published in the Federal Register to have legal effect. *See* 5 U.S.C. §§ 552(a)(1)(D), 552(a)(2)(B), 553(e). Trican does not point the Court to the portion of the Federal Register wherein it may locate this interpretive guidance.

Third, and most importantly, the section of the Fact Sheet to which Trican points the Court expressly states that the regulations are currently in a state of flux and that the Department "is undertaking [a formal rulemaking procedure] to revise the regulations located at 29 C.F.R. § 541 *et seq*.," and that, "[u]ntil the Department issues its final rule, it will enforce § 541 regulations in effect on November 30, 2016." Fact Sheet ¶ 7 n.*. Trican has not pointed, nor does the Court find, any revised version of 29 C.F.R. § 541 that alters its plain text. Absent a formal revision of the Department's regulations, promulgated in accordance with the Administrative Procedure Act, this Court is bound by the regulations that do not "go beyond the text of [the] statute" and that do not extend beyond the Department's "delegated powers." *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991). Those regulations are presently codified at 29 C.F.R. § 541.602.

Accordingly, the Court finds that there are genuine, triable issues of material fact as to whether the Field Engineers were paid on a salary basis, precluding summary judgment.

3. There is a genuine dispute as to the Field Engineers'
primary duty that precludes summary judgment.

Only those employees "whose primary duty [(1)] is the performance of office or non-manual work [(2)] directly related to the management or general business operations of the employer or the employer's customers" may be properly classified as "exempt" under the administrative exemption. 29 C.F.R. § 541.200. *See also* 29 U.S.C. § 213(a)(1) (same). The regulations define an employee's "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations further delineate work that is "directly related to the management or general business operations of the employer" as any work wherein the employee "assists with the running or servicing *of the business*." *Id.* § 541.201(a) (emphasis added).

Accordingly, regulations distinguish tasks that involve, *inter alia*, "working on a manufacturing or production line or selling a product in a retail or service establishment," each of which falls without the purview of work that is "directly related to the management or general business operations of the employer." *Id.* Thus, the relevant distinction "'is between those employees whose primary duty is *administering the business affairs of the enterprise* [and] those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.'" *Dewan*, 858 F.3d at 336 (quoting *Dalheim*, 918 F.2d at 1230).

A. The Field Engineers engaged in office or
non-manual work.

Trican alleges that the Field Engineers' work constituted "office or non-manual work." ECF No. 43, at 16. While it contends that such a characterization is "undisputed," the Field Engineers point the Court to "several instances throughout [their] employment wherein . . . [a]

22

Field Engineer would have to complete the duties of a fluid tech[nician], conducting manual fluid recovery." ECF No. 50, at 10. Otherwise, the Field Engineers appear to concede that "to adequately perform their job duties [*sic*], Plaintiffs would [at all other times, excepting these rare instances,] monitor down-hole well conditions from screens in the 'data van' on the well-site.'" *Id.* Trican alleges that the "Field Engineers spent 90% of their time in the data van monitoring computers, gauges, and monitors, and recording and analyzing data on a spreadsheet." ECF No. 43, at 16.

The Court thus agrees with Trican that the Field Engineers' "primary duty [was] the performance of office or non-manual work." *Id.* (citing 29 U.S.C. § 213(a)(1)).

B. There is a material dispute as to whether the Field Engineers' primary duty was directly related to Trican's management or general business operations.

While the parties agree that the Field Engineers engaged primarily in non-manual labor, they dispute whether the Field Engineers' primary duty was "directly related to the management or general business operations of the employer or the employer's customers," the second element of the "primary duty" prong. 29 U.S.C. § 213(a)(1).

Trican avers that the Field Engineers' primary duty "was to monitor and ensure quality control and assurance, including quality control of the well-operation." ECF No. 43, at 16. It explains that when a Field Engineer "identified a problem, [he or she] notified and conferred with the Company Man and/or the Service Supervisor." *Id.* at 17. Thus, according to Trican, because the Field Engineers "act[ed] as advisers or consultants to their employer's clients or customers," they were exempt from the FLSA. 29 C.F.R. § 541.201(c). Trican's reliance on this provision is misplaced.

The Field Engineers respond that the Field Engineers' primary duty "was to monitor the levels of certain materials on the well-site to ensure they remained within the guideline levels given to them by the District Engineer and Company Man." ECF No. 50, at 9–10. They explain that when the Field Engineers would discover that "the levels did not pass [those] guidelines, . . . they would give the information to the Service Supervisor and *he* would relay the information to other site employees and administrators." *Id.* at 11 (emphasis added). The Field Engineers explain that their work was primarily functional and not conceptual, and involved "monitoring the materials in the well to ensure they stayed within the parameters provided to them by the District Engineer, not the quality of materials that the company was selling to its customers." *Id.* (citing *Dewan*, 858 F.3d at 338). Thus, they contend that their duties cannot be "construed as administrative or work directly related to the management or general business" of Trican. *Id.*

Ultimately, the Court concludes there is a genuine material dispute that precludes summary judgment.

           ii.      The adviser/consultant exception is inapplicable to the Field Engineers.

Trican argues that the Field Engineers' work was directly related to Trican's management or general business operations because they acted as "consultant[s] to Trican's customer." ECF No. 43, at 17 (citing 29 C.F.R. § 541.201(c)). Trican specifically highlights the illustrative portion of the regulation, not its substantive rule. The regulation provides, *in toto*, that

> An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201(c).

For its part, Trican points to a Service Supervisor's (Fruhwirth) deposition testimony for the proposition that because the Service Supervisor "relied on the Field Engineer to work with him to make recommended changes to the Company Man, [the Field Engineers were] essentially acting as a consultant to Trican's customer." ECF No. 43, at 17. The testimony, however, does not necessarily compel that conclusion to the exclusion of all others. Indeed, Fruhwirth testified as follows:

> Q: And so when you were in the data van, were you and the field engineer doing your best to follow that design as the – so that the customer's expectations would be met?
> A: Yes.
> Q: But in your monitoring of these chemicals and sand, were you trying to identify problems or deviations from the plan?
> A: Yes.
>    . . .
> Q: And then were *you* the person that was making the decision to make whatever change you thought was necessary?
> A: Yes.
>    . . .
> Q: Would you rely on the field engineer to identify problems just like you were in case you missed something?
> A: Yes.

ECF No. 44-5, at 8 (Deposition of William T. Fruhwirth, Nov. 7, 2017) (emphasis added). From such testimony, a reasonable jury could conclude that Field Engineers relayed certain information to Fruhwirth, and that Fruhwirth, not the Field Engineers, would relay the information to the Company Man. Indeed, Fruhwirth's testimony tends to show only that the Service Supervisor, not the Field Engineers, was directly advising or communicating with Trican's customers.

Not once does Fruhwirth ever mention that any Field Engineer spoke with any Company Man or any other Trican customer or client. To the contrary, his testimony indicates that all such communications between the Company Man and the Field Engineers went through him. *See* ECF No. 44-5, at 8–10. Nor does Fruhwirth ever say that the Field Engineers' "primary duty" was to

act as an adviser or consultant. Instead, he explains that the Field Engineers primarily reported certain data to him directly, not to a third party. *Id.*

Still, Trican maintains that Field Engineers "conferred with the Company Man and/or the Service Supervisor," thus establishing the adviser/consultant relationship contemplated at 29 C.F.R. § 541.201(c). ECF No. 43, at 17. But, in *Dewan*, the Fifth Circuit expressly rejected an analogous argument. There, it explained that whether an advisor or consultant's duties are within the purview of the administrative exemption turns on "'whether the activities are directly related to *management policies* or *general* business operations.'" *Dewan*, 858 F.3d at 331 (quoting and adopting *Bratt v. Cty. of Los Angeles*, 912 F.3d 1066, 1070 (9th Cir. 1990)) (emphases in original). The Court went on to explain that "the focus is not on a general concept of advice or consultancy but rather on 'policy determinations [for] how a business should be run or run more efficiently.'" *Id.* (quoting *Bratt*, 912 F.3d at 1070) (alteration in original).

Here, Trican attempts to distinguish the Field Engineers' purported advisory/consultancy roles from those of the mud engineers in *Dewan*, pointing to testimony wherein the Field Engineers "specifically testified that they were responsible for monitoring *quality control of the operations.*" ECF No. 53, at 6–7. It further advances that the *Dewan* Court "found the mud engineers did *not* monitor the quality of the materials being provided to the defendant's customers." *Id.* at 6.

But whether the Field Engineers were engaged in "quality control of the operations" is an inquiry under 29 C.F.R. §§ 541.201(a)–(b), not (c). Trican has advanced no argument to establish that the Field Engineers formulated "policy determinations for how" Trican's or its customers' businesses "should be run more efficiently," the dispositive inquiry under 29 C.F.R. § 541.201(c). Trican's assertion that the *Dewan* Court made any factual findings is entirely incorrect, if not outright misleading. *See* ECF No. 53, at 6. *Dewan* was an interlocutory appeal from District

Court's order granting the defendant's motion for summary judgment. *See* 858 F.3d at 333. The Court explicitly stated that because the "limited factual record could reasonably be interpreted to provide two different understandings" of the plaintiffs' roles as advisors or consultants, a jury was required to weigh the evidence in the first instance. *Id.* at 340. So too here. Given this record, a reasonable jury could find that § 541.201(c) is applicable or inapplicable to the Field Engineers. Accordingly, summary judgment is inappropriate under § 541.201(c).

Finally, even if, *arguendo*, § 541.201(c) applied to the Field Engineers, and if this case were meaningfully distinguishable from *Dewan* at this stage, the regulation is not dispositive: it only states that such employees "*may* qualify for the administrative exemption." *Id.* (emphasis added). Whether such an employee actually qualifies for the exemption is a fact-intensive inquiry that cannot be decided on summary judgment. *See Singer*, 324 F.3d at 818 (such "ultimate determination[s]" necessarily "rel[y] on many factual determinations to be resolved by a jury").

Thus, there is a genuine, material question of fact as to whether the Field Engineers acted as advisors or consultants, precluding summary judgment.

        iii.    There is a material dispute as to whether the Field Engineers' "quality control" duties were directly related to Trican's management or general business operations.

Trican next contends that because the Field Engineers' primary duty was that of "quality control," their duties were necessarily within the purview of the administrative exception. *See* ECF No. 43, at 16 (citing 29 C.F.R. §§ 541.201(a)–(b)). The Field Engineers do not necessarily dispute that their job duties constituted "quality control," and concede that the regulations contemplate "quality control as one of the areas that can be 'related to' management." ECF No. 50, at 10 (citing 29 C.F.R. § 541.201(b)). The Field Engineers point the Court to *Dewan*, where

the Fifth Circuit reversed a grant of summary judgment to an employer who asserted an affirmative FLSA defense under the administrative exemption. *See* 858 F.3d at 340.

In *Dewan*, the Court explained that although the parties did not dispute that the plaintiffs' work involved (1) "continuous and regular contact with the company men at the drilling location where they are assigned[;]" (2) "provid[ing] recommendations[;]" (3) "anticipat[ing] the customer's concerns with the drilling mud[;]" and (4) "address[ing] those concerns on [the company's] behalf," such facts were insufficient to establish the defendant's affirmative FLSA defense. *See id.* at 336–37. Here, too, the parties do not dispute that the Field Engineers' primary duties involved each of the foregoing tasks, exchanging "mud" in *Dewan* for "chemicals" in the instant case. *See* ECF No. 43, at 9–11; ECF No. 50, at 2–6, 11; ECF No. 53, at 6–8.

The proper inquiry for this Court, then, is whether the Field Engineers engaged in their primary duties for the purpose of "administering the business affairs of the enterprise" or, instead, for "producing the commodity or commodities, whether goods or services, that [Trican] exists to produce and market." *Dewan*, 858 F.3d at 336 (citing *Dalheim*, 918 F.2d at 1230). In *Dewan*, the Fifth Circuit held that a mud engineer's primary duty of "[s]upplying the drilling fluid systems" to "improve, even optimize, drilling performance to the oil industry while reducing costs [to his employer]," was "more related to producing the commodities than the administering of [the defendant's] business." *Id.* at 336–37.

Although Trican correctly highlights that two Field Engineers testified their duties involved "quality control of the operations," this is wholly insufficient to establish that it is entitled to summary judgment as a matter of law. *See* ECF No. 53, at 7. Trican points to no other testimony in the record from which the Court can ascertain whether the Field Engineers engaged in work "directly related to the management" of Trican. 29 C.F.R. § 541.201(b). For example, Trican

does not argue, nor does it point to any evidence to show, that the Field Engineers "oversaw the work performed by [Trican's] customers' employees, contractors, and equipment." *Dewan*, 858 F.3d at 338 (citing *Zannikos v. Oil Inspections (USA), Inc.*, 605 F. App'x 349, 351 (5th Cir. 2015)). Nor, as another example, does it offer any argument or evidence to show that the Field Engineers "engaged in tasks likely to qualify as the 'general administrative work applicable to the running of *any* business.'" *Id.* (quoting *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009)) (emphasis added).

Because a reasonable factfinder could conclude either affirmatively or negatively that the Field Engineers' quality control duties were administrative, Trican has not met its initial burden to establish "beyond peradventure" that such duties were directly related to Trican's management or general business operations. *See Dewan*, 858 F.3d at 334 (citing *Smith*, 827 F.3d at 420 n.4); *accord Elliott v. Dril-Quip, Inc.*, No. H-14-1743, 2015 WL 7302764, at *11 (S.D. Tex. Nov. 18, 2015) (denying summary judgment to the employer, on analogous facts, where it failed to establish that the employee "[fell] plainly and unmistakably within the terms and spirit of the exemption").

Accordingly, there is a genuine, fact-specific and material dispute as to whether the Field Engineers engaged in "office or non-manual work" within the meaning of the regulations. The Court must therefore deny Trican's motion for summary judgment.

iv. There is a genuine dispute as to whether the Field Engineers exercised discretion and independent judgment with respect to matters of significance, precluding summary judgment.

Finally, the FLSA administrative exemption only applies to those employees "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). To prove that the Field Engineers exercised "discretion and independent judgment," Trican must provide the Court with "the comparison and

the evaluation of possible courses of conduct" in which the Field Engineers regularly engaged. *Id.* § 541.202(a). And to provide whether the Field Engineers' duties touched "matters of significance," Trican must indicate to the Court the "level of importance or consequences of the work performed." *Id.*

If Trican makes these initial showings, then the Court, making all factual inferences in the Field Engineers' favor at this stage, will evaluate whether the Field Engineers exercised "discretion and independent judgment" using the factors outlined at 29 C.F.R. § 541.202(b). The Court is cognizant that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources" and that, in general, "recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work," falls without the purview of the definition. *Id.* § 541.202(e). The Court must also consider that an employer's potential pecuniary loss "if the employee fails to perform the job properly" does not render the position exempt under the administrative exemption. *Id.* § 541.202(f).

And yet, the Court must account for the fact that "the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review," so that "decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." *Id.* § 541.202(c).

Given the exceedingly fact-specific nature of this inquiry, and because, on this record, the Court finds that a reasonable jury could determine that the Field Engineers either did or did not exercise discretion and independent judgment on matters of significance, the Court must deny Trican's motion for summary judgment.

Trican urges that because the Field Engineers' duties "satisf[ied] three of the several non-exhaustive factors to be considered in determining whether an employee exercised 'discretion and independent judgment," that it is entitled to summary judgment as a matter of law. ECF No. 43, at 18 (citing 29 C.F.R. § 541.202(b)). The Court is not persuaded.

First, the parties paint vastly different pictures as to the extent to which the Field Engineers engaged in discretionary duties. Trican explains that the Field Engineers "work[ed] to identify and resolve problems," that their work "affected Trican well-operations to a substantial degree," and that they "worked to consult and advise the Service Supervisor and/or the Company Man regarding down-hole well operations." ECF No. 43, at 18. In response, the Field Engineers allege that "Field Engineer[s] had no discretion in recommending changes to a project to resolve an identified problem," that "the Service Supervisor . . . had the sole discretion to make recommendations on how to solve issues," and that "[t]he final decision of how to solve issues at the well-site rested with the Company Man." ECF No. 50, at 12–13.

Trican's response, that "a Field Engineer's failure to perform his duties properly could have serious consequences, including slowing the efficiency of operations or causing Trican to incur a large financial loss," is insufficient, on its own, to establish that the Field Engineers exercised independent judgment and discretion. ECF No. 53, at 9. *See* 29 C.F.R. § 541.202(f) ("An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly.").

Where, as here, the "limited factual record could reasonably be interpreted to provide two different understandings of the scope of the plaintiffs' discretionary and independent judgment," the Fifth Circuit requires such evidence to "be weighed by a jury." *Dewan*, 858 F.3d at 340.

Moreover, because the Court does not weigh evidence at the summary judgment stage, but rather determines only whether a fact question exists, *see Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002), it cannot ascertain as a matter of law whether the Field Engineers' *primary* duties involved an exercise of discretion and independent judgment, as the regulations require. *See* 29 C.F.R. § 541.202(a) (explaining that the exercise of independent judgment and discretion on matters of significance must be an employee's "primary duty").

Therefore, the Court finds that Trican has not established its affirmative defense beyond peradventure, and therefore will deny Trican's motion for summary judgment on the basis that the Field Engineers were administrative employees.

b.    Highly Compensated Employee Exemption

Trican next moves for summary judgment on the theory that some Field Engineers and Fruhwirth are exempt from the FLSA's overtime requirements because they are "highly compensated employees." *See* ECF No. 43, at 18–29; ECF No. 53, at 9.  In general, to qualify for this exemption, (1) an employee's total compensation must total $100,000[3] and (2) he or she must "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an . . . administrative . . . employee."  29 C.F.R. §§ 541.601(a)(1)–(2).  Additionally, (3) the employee's "'[t]otal annual compensation' must include at least a weekly amount [of $455]."  *Id.*

---

[3] The Court notes that the figure of $100,000 does not appear in the current version of the regulations.  Instead, for work performed before December 1, 2016, the requirement is that an employee "receive[] total annual compensation of at least the annualized earnings amount of the 90th percentile of full-time nonhourly workers nationally[.]"  29 C.F.R. § 541.601(a)(1).  For work after December 1, 2016, the employee must "receive an annual compensation of at least $134,004."  *Id.* § 541.601(b).  Trican provides no evidence to support its allegation that an annual remuneration of $100,000 was within the ninetieth percentile of full-time, nonhourly workers for the years in which plaintiffs were in its employ.  But because plaintiffs also argue that the highly-compensated employee exemption applies to individuals who earn east least $100,000 *per annum*, the Court will assume that the parties stipulate to this figure for the purposes of deciding summary judgment.  *Cf. Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 676–77 (2010) (the Supreme Court has "long recognized" that litigants are entitled to have their cases determined upon the assumption that stipulated facts in the record were established).

§ 541.601(b)(1). Finally, (4) the employee's "primary duty" must "include[] performing office or non-manual work." *Id.* § 541.601(d).

While the Court recognizes that "[a] high level of compensation is a strong indicator of an employee's exempt status," and that an employee "may qualify as a highly compensated [administrative] employee even though the employee does not meet all of the other requirements for the [administrative] exemption," the Court has already concluded that Trican fails to establish that the Field Engineers "customarily and regularly perform[ed] any one or more of the exempt duties" of an administrative employee. 29 C.F.R. § 541.601(c).

Moreover, the Court has already established that there exist triable questions of fact as to whether the Field Engineers' total weekly salaries met the $455 threshold, and whether the Field Engineers' primary duty involved office or non-manual work. Accordingly, even if, *arguendo*, the Court could conclude that the Field Engineers "customarily and regularly" engaged in some administrative duties, the Court would be precluded from entering summary judgment in Trican's favor when, as here, genuine issues of material fact exist as to the Field Engineers' weekly salaries and the nature of their primary duties. *See, e.g.*, *Snively v. Peak Pressure Control, LLC*, 317 F. Supp. 3d 911, 917 (W.D. Tex. 2018); *Pruneda v. Xtreme Drilling & Coil Servs., Inc.*, 2017 WL 3023214, at *12 (W.D. Tex. Jun. 30, 2017); *Benavides v. City of Auston*, 2012 WL 12882001, at *14 (W.D. Tex. Sept. 21, 2012).

Thus, on this record, Trican has not established that the Field Engineers meet each element of the highly-compensated employee exception, as it is required to do when raising the FLSA as an affirmative defense. *See Smith*, 827 at 420 n.4. Therefore, the Court is precluded from entering summary judgment in its favor as a matter of law.

For the foregoing reasons, the Court will deny Trican's motion for summary judgment on the basis that the Field Engineers and Fruhwirth were highly-compensated employees.

3.   *Fruhwirth's FLSA overtime claim cannot be resolved on summary judgment.*

Trican also argues that Fruhwirth is exempt from the FLSA under the highly-compensated employee exemption and it is entitled to summary judgment in its favor as to his claims.  *See* ECF No. 43, at 19;  ECF No. 53, at 9.  Trican does not argue that any other FLSA exemption applies to Fruhwirth, notwithstanding its allegation that "[a]s a Service Supervisor, Fruhwirth was the highest-ranking Trican employee on the well-site location [whose] primary duty was to supervise his crew[.]"  ECF No. 43, at 12.

As with the Field Engineers, the Court finds that there is a genuine dispute of material fact as to whether Trican satisfied the weekly compensation requirement as to Fruhwirth.  *See* 29 C.F.R. § 541.601(b)(1)  (the highly-compensated employee's "'[t]otal annual compensation' must include at least a weekly amount [of $455]").  Because Fruhwirth has alleged, with significant supporting evidence, that every Trican employee received the February 9, 2015 Wage Reduction notice and that his remuneration was reduced "because of a variation in quantity or quality of work," 29 C.F.R. § 541.118(a), there exists a triable issue of fact as to whether Fruhwirth was a highly-compensated employee within the meaning of the regulations.  ECF No. 50, at 8.

Accordingly, the Court will deny Trican's motion for summary judgment as to Fruhwirth's claims, on the basis that Fruhwirth was a highly-compensated employee without the purview of the FLSA.

4.    *Trican's alleged FLSA violations were not willful, so the Field Engineers'*
      *claims shall be governed by the two-year statute of limitations.*

Finally, Trican argues that all of the plaintiffs' claims are governed by a two-year statute of limitations.  ECF No. 43, at 21; ECF No. 53, at 12–14.  Indeed, the FLSA requires aggrieved parties to commence their causes of action "within two years after the cause of action accrued," absent an "action arising out of a willful violation," which "may be commenced within three years after the cause of action accrued[.]"  29 U.S.C. § 255(a).

Plaintiffs bear the burden of proving that an alleged violation of the FLSA was willful. *See, e.g.*, *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).  To establish willfulness, "[plaintiffs] must show that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the Act."  *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)).

To be sure, an employer who "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" is merely negligent.  *McLaughlin*, 486 U.S. at 134–35.  An employer who fails to seek legal advice regarding its payment practices may be negligent, but its alleged violations are not willful.  *See id.*; *see also Mireles v. Frio Foods, Inc.*, 899 F.3d 1407, 1416 (5th Cir. 1990).  Willfulness is a question of fact.  *See Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993).  Accordingly, summary judgment on the issue of willfulness is appropriate only "if the plaintiff has introduced evidence sufficient to support a finding of willfulness."  *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (citing *Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.*, 894 F.2d 671, 674 (5th Cir. 1991).

Here, the Field Engineers advance two arguments to support their position that Trican acted willfully.  First, they allege that one Field Engineer, Perales, "alerted management that he should be getting paid overtime on numerous occasions."  ECF No. 50, at 2, 6.  Trican responds that

Perales did not complain that Trican was violating the FLSA, but instead that "he wished he could be moved to [an] hourly [position] because he thought he would make more money – not that he thought he was improperly denied overtime as a Field Engineer." ECF No. 53, at 12. It contends further that Perales made only "a single complaint," whereas the Field Engineers maintain that he made complaints "on numerous occasions." *Compare* ECF No. 53, at 12, *with* ECF No. 50, at 2.

Perales's testimony does not persuade the Court that his complaints to his supervisor were sufficient to put Trican on notice of any alleged FLSA violation. In his deposition, he explained his complaints to his supervisor as follows:

> Q:     As you sit here today, are you able to say how much overtime you worked at Trican that you believe you were not paid for?
> A:     No.
> Q:     Did you ever complain to anyone during your employment with Trican that you believed you should be paid overtime and you weren't being paid overtime?
> A:     Yes.
> Q:     Who did you complain to?
> A:     I brought it up to Kevin Bagley.
> Q:     And did you complain to him on one occasion or more than one occasion?
> A:     More than one.
> Q:     How many times?
> A:     I don't recall.
> Q:     I'm sorry?
> A:     I don't recall.
> Q:     Was this during the time that you were a field tech rep?
> A:     Yes.
> Q:     And tell me, as best you can remember, what you told Kevin.
> A:     Wish I get paid – Wish I get – Wish I get moved – Could get moved to hourly because we make more money because we're getting shortchanged.
> Q:     So you told him you thought you should get moved to hourly because you thought you would make more money?
> A:     Yes.
> Q:     And what did Kevin say?
> A:     That he would look into it.
> Q:     Did you ever talk to him about it again after that?
> A:     No.
> Q:     Any other complaints you can recall –
> A:     No.
> Q:     – Thinking about your overtime?
> A:     Not that I recall, no.

ECF No. 44-3, at 4 (Deposition of Jose Perales, dated Jan. 5, 2018).

Perales's testimony indicates that his only complaint to his supervisor was that he wanted to move to an hourly position to "make more money." ECF No. 44-3, at 4. While he informed his supervisor of his belief that Trican was "short-chang[ing]" the Field Engineers, his testimony is silent as to whether he indicated to his supervisor a belief that Trican's conduct was unlawful. *Id.* Instead, he told his supervisor that he wanted to change to an hourly position "because [he] thought [he] would make more money." *Id.* Perales never followed-up with his supervisor after the initial conversation. Thus, based on this testimony, the Court finds that no reasonable jury could conclude that Perales made any further complaints to any management personnel or that Trican acted in reckless disregard of the FLSA's overtime requirements. *Contra Singer*, 324 F.3d at 821–24.

By contrast, in *Singer*, two witnesses offered unequivocal testimony that "amply support[ed] the jury's finding" that their employer's FLSA violations were willful. *Singer*, 324 F.3d at 822. The witness-employees' testimony "suggest[ed] that the [employer] knew its method of paying the [employees] violated the FLSA." *Id.* at 821. There, the first employee, "a [mid-level supervisor], testified that . . . he met with [his supervisor], who admitted he was aware that the [employees] were being paid incorrectly." *Id.* at 821–22. The second employee, a "former director of human resources for the [employer], testified that the [employer] cancelled a training seminar, which would have informed employees about overtime issues under the FLSA." *Id.* at 822. Additionally, the former human resources director "stated that, several years ago, he attempted to convince the [employer] to study its pay practices to determine if it was in compliance with the FLSA" and addressed the issue with "the [employer's] finance director." *Id.* The finance director spoke with "the [employer's] attorney" who responded that the employer "'[didn't] even

want to open that can of worms.'" *Id.*  The Fifth Circuit concluded that such evidence was sufficient to demonstrate the employer's willful violations of the FLSA.  *See id.*

This record is thus readily distinguishable from *Singer*.  Here, Perales's testimony is inconsistent.  He initially testified that he spoke with his supervisor about moving to an hourly position "[m]ore than one" time, but moments later testified that he did not recall whether he addressed his "complaints" about his pay with his supervisor on more than one occasion.  ECF No. 44-3, at 4.  Moreover, nothing in the record indicates that any employee put Trican on notice of any allegedly unlawful wage payment practices under any state or federal law.  Accordingly, the Court finds that the testimony in the record cannot reasonably support a finding that Trican either "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'"  *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin*, 486 U.S. at 133).

Second, the Field Engineers allege that in or about 2013, another group of Field Engineers sued Trican alleging, *inter alia*, that they were misclassified as "exempt" under the FLSA.  *See* ECF No. 50, at 16 (citing *Gauthier v. Trican Well Serv., Ltd.*, No. 6:13-CV-00046 (E.D. Tex. Jan. 9, 2013).  They advance that an employer's FLSA violations "can be willful when 'the employer had actual notice of FLSA requirements by virtue of its earlier violations.'"  *Id.* (quoting *Sealey v. EmCare, Inc.*, No. 2:11-CV-00120, 2013 WL 164040, at *3 (S.D. Tex. Jan. 4, 2013)).  They point the Court to *Villegas v. Dependable Constr. Servs., Inc.*, No. 4:07-CV-2165, 2008 WL 5137321, at *27 (S.D. Tex. Dec. 8, 2008), for the proposition that "[i]f the violations in [the other] litigation resemble those potentially at hand, it is possible that [d]efendants had knowledge that they were violating FLSA at the time they classified" the plaintiffs. *See* ECF No. 50, at 17.

Trican responds that the Field Engineers have failed to advise the Court as to whether the *Gauthier* litigation resulted in "any adverse ruling against Trican," and therefore their argument "invites this Court to find a fact issue as to willfulness because other employees once brought allegations against Trican for misclassification." ECF No. 53, at 13.

The Field Engineers' citation to *dicta* in *Villegas*, a non-binding opinion from the Southern District of Texas, is unpersuasive. There, the court found that the plaintiffs failed to establish willfulness under FLSA. *See* 2008 WL 5137321, at *27. That court explained that "a lawsuit filed [2 years prior to the instant case] is immaterial to job classifications made prior to that year." *Id.* So too here. While neither party identifies any of the Field Engineers' start dates in their pleadings,[4] they do not dispute that the Field Engineers were classified in their current positions since at least January 8, 2013. ECF No. 43, at 9; ECF No. 50, at 2. The *Gauthier* litigation commenced on January 9, 2013. *See Gauthier*, No. 6:13-CV-00046, Dkt. No. 1. Accordingly, at the time of the Field Engineers' alleged misclassification, it was not "possible that [Trican] had a better understanding of the law." This case is thus distinguishable from *Villegas*.

The Field Engineers and Fruhwirth have pointed to no evidence, and the Court finds none in the record, to establish whether, during the course of the *Gauthier* litigation, Trican was put on actual notice of any ongoing FLSA violations, whether Trican's agents were required to take any training in FLSA's requirements, or whether the *Gauthier* court found that Trican's alleged violations of the FLSA in that case were willful.

While Rule 56 requires this Court to construe all facts in favor of the Field Engineers at this stage, they bear the burdens of production and persuasion to demonstrate willfulness. *See Cox*, 919 F.3d at 356. Field Engineers and Fruhwirth have not met their burden on this record.

---

[4] *See supra* note 1.

Accordingly, the Court will grant Trican's motion for summary judgment as to the issue of willfulness.

## II.    Alawar's Objections

Because the Court will deny Trican's motion for summary judgment in substantial part, it does not reach the merits of the Field Engineers' and Fruhwirth's objections to Jason Cleveland's declaration, Trican's response, and plaintiffs' reply. *See* ECF No. 49; ECF No. 54, ECF No. 57. The Court will overrule the objections without prejudice, and the Field Engineers and Fruhwirth may raise them at trial, as relevant, in accord with the Federal Rules of Evidence. *See* Fed. R. Civ. P. 56(c)(2)(B).

## III.    Conclusion

For the foregoing reasons, the Court will **GRANT** Trican's motion for summary judgment as to the issue of willfulness and will **DENY** Trican's motion for summary judgment in all other respects. A separate order will follow.

SIGNED this 28th day of August, 2019.

_____
Royce C. Lamberth
United States District Judge